## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------ x
SYED K. RAFI, PhD.,              :
                                 :
          Plaintiff,             :   Civil No. 3:18-cv-635(AWT)
                                 :
v.                               :
                                 :
YALE UNIVERSITY SCHOOL OF        :
MEDICINE, ALLEN E. BALE, M.D.    :
(in official and personal       :
capacity), RICHARD P. LIFTON,    :
M.D., PhD., BRIGHAM AND WOMEN'S  :
HOSPITAL, HARVARD MEDICAL        :
SCHOOL, and CYNTHIA C. MORTON,   :
PhD.,                            :
                                 :
          Defendants.            :
------------------------------ x
```

### RULING ON MOTIONS TO DISMISS

Plaintiff Dr. Syed K. Rafi, proceeding pro se, brings claims

against Yale University School of Medicine ("Yale"), Dr.  Richard

Lifton ("Lifton"), and Dr. Allen Bale ("Bale") (collectively the

"Yale Defendants"); Brigham and Women's Hospital ("BWH") and Dr.

Cynthia Morton ("Morton") (collectively the "BWH Defendants"); and

Harvard Medical School ("HMS")[1]. The plaintiff alleges in his Third

Amended Complaint, ECF No. 52, that the defendants have conspired

to violate his civil rights in violation of 42 U.S.C. § 1985, have

neglected to prevent such an act in violation of 42 U.S.C. § 1986,

---

[1] The court notes that the correct legal name for Harvard
University, which includes the Harvard Medical School, is
President and Fellows of Harvard College.

and have defamed him. The defendants have separately moved to dismiss these claims pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). For the reasons set forth below, each motion is being granted.

## I.   FACTUAL ALLEGATIONS

The Third Amended Complaint, "which [the court] must accept as true for the purposes of testing its sufficiency," alleges the following circumstances. Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir. 1997).

In January 2001, the plaintiff began his employment with Yale as a clinical cytogenetics trainee under the supervision of defendant Lifton, the Chairman of the Genetics Department at Yale. During the plaintiff's time as a cytogenetics trainee, he worked in the laboratory of Dr. Mazin Qumsiyeh, the Director of the Clinical Cytogenetics program at Yale and a vocal activist on issues affecting Palestine.

The plaintiff alleges that Yale terminated Qumsiyeh because of his pro-Palestinian activism. In an effort to avoid an employment discrimination suit by Qumsiyeh, Lifton, on behalf of Yale, concurrently fired Dr. Barbara Pober, a medical geneticist at Yale who is Jewish, and pressured the plaintiff to file a written complaint against Qumsiyeh. At Lifton's behest, the plaintiff provided a confidential complaint against Qumsiyeh but

informed Lifton that he would be unwilling to serve as a witness
against Qumsiyeh.

Thereafter, the plaintiff declined to accept an offer to fill
Qumsiyeh's vacant faculty position and left Yale to move to Boston,
Massachusetts. According to the plaintiff, Lifton and Yale
unlawfully interfered with his efforts to obtain employment at
various institutions in the Boston area, including at BWH, HMS,
Children's Hospital Boston ("CHB"), Massachusetts General Hospital
("MGH"), and others. Specifically, the plaintiff alleges that
Lifton and Yale engaged in "race and class based conspiratorial
collusion" with Morton, the Director of Clinical Cytogenetic
Laboratories at BWH and HMS, to ensure that he was not hired at
BWH-affiliated and HMS-affiliated institutions. Third Am. Compl.
at 22. The plaintiff alleges that "[t]hese alleged conspiratorial
ceaseless denials of professional job opportunities [were] to
coerce [him] to take up a position at [Yale] instead[,]" so that
he could testify as "a defensive witness against . . . Qumsiyeh"
and could "facilitate the return of Dr. Pober[.]" Id. at 21. The
plaintiff does not allege why Yale sought the return of Pober. Nor
does he allege why his return to Yale would facilitate her
rehiring.

According to the plaintiff, the collusion resulted in the
"coerci[ve] and retaliatory non-consideration of . . . every
professional clinical cytogenetics job application at [Morton's]

diagnostic clinical cytogenetics laboratory at BWH (HMS) from 2004
through 2019[,] along with dozens of medical genetics research and
training positions at Harvard affiliated hospitals and medical
centers from 2004 to 2019, totaling more than 100 job
applications." Id. at 6. Several prospective employers, including
Morton, allegedly informed the plaintiff that they could not
consider the plaintiff for any cytogenetics positions because
Bale, the Director of the American Board of Medical Genetics and
37 Genomics ("ABMGG") training program at Yale, had "vetoed" the
plaintiff's candidacy when he was called by them as a reference:

> [S]everal of those prospective employers over these
> years, who did not appreciate Dr. Bale's vengeful
> continued vetoing of plaintiff's job prospects, chose to
> reveal the reason as [Yale's] vetoing of those job
> opportunities [] for their inability to proceed ahead
> with plaintiff's well qualified candidacies.
>
> . . .
>
> At [HMS], Dr. Bieber (a senior associate clinical
> cytogenetics laboratory director who serves along with
> [Morton] . . . ) informed Dr. Rafi during 2004 that
> [Lifton] . . . wanted to offer Dr. Rafi a faculty
> position at Yale, thus indicated that he and [Morton]
> could not offer Dr. Rafi a position at their clinical
> cytogenetics laboratory at BWH/HMS, and this assertion
> is clearly evident in [Morton's] prior initial email to
> Dr. Rafi, dated December 28, 2002, wherein "she
> encourages Dr. Rafi to try to work something out at Yale,
> where it was clear to her from the reference letters
> that she had received that Dr. Ravi was [valued] as a
> member of the cytogenetics staff at Yale" – meaning that
> Yale did not permit her to consider Dr. Rafi for a
> position at BWH/HMS after the completion of his
> professional [training] at Yale.
>
> . . .

-4-

> Over these years, several of the prospective employers
> around the nation have indirectly alluded to [Yale's
> interference] in their inability to consider Dr. Rafi's
> candidacies. It should be noted that professional
> courtesy demands not explicitly disclosing the alleged
> "*third party*"- vetoing by Dr. Bale (Yale).

Id. at 50, 52, 63 (emphasis in the original). Several employers encouraged him to seek a position at Yale instead, which he repeatedly sought and was denied. See id. at 21, 37, 55.

According to the plaintiff, Yale's collusion with HMS, BWH, and their agents has "permanently destroyed . . . [his] high-paying and in-demand professional clinical cytogenetic . . . and medical genetics career" and has "undeniably rendered him a 'pauper' today." Id. at 67. "The consequent suffering and dire financial hardship over the years [have] forced plaintiff to seek even labor-oriented temporary jobs to survive." Id. The plaintiff alleges that he is entitled to damages, including "reparations for the alleged white-collar slavery" he has been subjected to, compensation for lost wages and future losses, and compensation for emotional distress. Id. at 68.

## II. LEGAL STANDARDS

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). Where a defendant challenges "only the sufficiency of the plaintiff's

factual allegations, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). "[W]hen a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." Seetransp., Wiking, Trader, Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993) (quoting Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam) (citations omitted)). However, "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." Id. (quoting Taylor, 912 F.2d at 431).

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 547. "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the

plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993). "[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

## III.  DISCUSSION

The BWH Defendants, the Yale Defendants, and HMS separately move to dismiss the Third Amended Complaint to the extent that it asserts claims against them. The BWH Defendants move to dismiss under Rule 12(b)(2) on the ground that the court lacks personal jurisdiction over them, and also under Rule 12(b)(6) on the grounds that the claims in the Third Amended Complaint are barred by the doctrine of res judicata, are barred by the applicable statute of

limitations, and fail to state a claim upon which relief can be granted. HMS and the Yale Defendants move to dismiss the Third Amended Complaint under Rule 12(b)(6) on grounds identical to those raised by the BWH Defendants, except that the Yale Defendants have not moved to dismiss the Third Amended Complaint as time-barred. The BWH Defendants' motion is being granted because the court lacks personal jurisdiction over the BWH Defendants, and the plaintiff's claims against them are also barred by the doctrine of <u>res judicata</u>. HMS' and the Yale Defendants' motions are being granted because the plaintiff's claims as to each defendant are barred by the doctrine of <u>res judicata</u>.[2]

### A. Personal Jurisdiction

The BWH Defendants contend that they are not subject to personal jurisdiction in this district. The court agrees.

"In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution, we look to the law of the forum state to determine whether a federal district court has personal jurisdiction over a defendant." <u>Brown v. Lockheed Martin Corp.</u>, 814 F.3d 619, 624 (2d Cir. 2016). <u>See also</u> Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons . . . establishes personal jurisdiction over a defendant[] who is

---

[2] Because the court concludes that the plaintiff's claims are barred by the doctrine of <u>res judicata</u>, it need not address the other proffered grounds for dismissal.

subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. . . ."); PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997) (stating federal court applies forum state's personal jurisdiction rules in federal question case "if the federal statute does not specifically provide for national service of process").

In Connecticut, "a trial court may exercise jurisdiction over a [defendant] only if the defendant's intrastate activities meet the requirements both of [the state's long-arm] statute and of the due process clause of the federal constitution." Thomason v. Chem. Bank, 234 Conn. 281, 285-86 (1995). "[The] first inquiry must be whether [Connecticut's] long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case. Only if [the court] find[s] the statute to be applicable [does the court] reach the question whether it would offend due process to assert jurisdiction." Lombard Bros., Inc. v. Gen. Asset Mgmt. Co., 190 Conn. 245, 250 (1983). See also Chloe v. Queen Bee of Beverly Hills, 616 F.3d 158, 163-64 (2d Cir. 2010) ("To determine personal jurisdiction over a non-domiciliary . . . the Court must engage in a two-step analysis. First, we apply the forum state's long-arm statute. . . . If [it] permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause[.]").

The plaintiff has failed to allege facts sufficient to establish that this court has personal jurisdiction over the BWH Defendants under Conn. Gen. Stat. § 52-59b(a) or Conn. Gen. Stat. § 33-929(f)(4), Connecticut's long-arm statutes pertaining to nonresident individuals and corporations, respectively.[3] Because these statutes do not authorize the exercise of personal jurisdiction in this case, the court need not address whether it would offend due process to assert such jurisdiction.

Conn. Gen. Stat. § 52-59b(a) provides in relevant part:

[A] court may exercise personal jurisdiction over any nonresident individual, foreign partnership or foreign voluntary association . . . who in person or through an agent: . . . (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]

_____

[3] In their memorandum, the BWH Defendants limit their analysis to Conn. Gen. Stat. § 52-59(b), stating that it allows a "Connecticut court [to] exercise personal jurisdiction over a nonresident individual or foreign corporation[.]" Mem. at 17. However, this statute only confers personal jurisdiction over nonresident individuals, foreign partnerships, and foreign voluntary associations. Conn. Gen. Stat. § 33-929(f), in contrast, confers personal jurisdiction over "foreign corporation[s]," such as BWH.

<u>Id.</u>  Conn. Gen. Stat. § 33-929(f)(4) provides in relevant part:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: . . . (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

<u>Id.</u>

The Third Amended Complaint alleges that BWH and Morton, residents of Massachusetts, <u>see</u> Third Am. Compl. at 64, conspired against the plaintiff, a current resident of Virginia, to deny his "four dozen professional and non-professional job applications." <u>Id.</u> at 14. The Third Amended Complaint alleges that these denials occurred in Massachusetts while the plaintiff was still a resident of Massachusetts. <u>See e.g.</u>, <u>id.</u> at 17. It does not allege that the plaintiff was denied a job in Connecticut. Nor does it allege that he was denied a job while he was a resident of Connecticut. Thus, the court agrees with the BWH Defendants that because "the underlying conduct complained of clearly did not occur in Connecticut, nor did it cause injury in Connecticut where the plaintiff was not a resident or present in Connecticut at the time," "there is no personal jurisdiction" over the BWH Defendants in this district. Mem. at 17.

**B. Res Judicata**

The BWH Defendants, HMS, and the Yale Defendants argue that the Third Amended Complaint should be dismissed because its claims are barred by the doctrine of res judicata. The court agrees.

"The term res judicata, which means essentially that the matter in controversy has already been adjudicated, encompasses two significantly different doctrines: claim preclusion and issue preclusion." Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 779 F.3d 102, 107 (2d Cir. 2015) ("Marcel I"). "At issue here is claim preclusion, a doctrine which, in the usual situation, bars a plaintiff from relitigating claims against a defendant that it lost in a previous action against the same defendant and claims that the plaintiff could have brought in that earlier action but did not." Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc., 898 F.3d 232, 236-37 (2d Cir. 2018). Claim preclusion "serves the interest of society and litigants in assuring the finality of judgments, [and] also fosters judicial economy and protects the parties from vexatious and expensive litigation." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000). It ensures that "[w]hen a party is victorious, it [does] not have to defend that victory again." N. Assur. Co. of Am. v. Square D. Co., 201 F.3d 84, 89 (2d Cir. 2000).

"Preclusion of a claim . . . requires a showing that (1) the previous action involved an adjudication on the merits; (2) the

-13-

previous action involved the same adverse parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Marcel I, 779 F.3d at 108. "In deciding whether a suit is barred by res judicata, it must first be determined that the second suit involves the same 'claim' or—'nucleus of operative fact'—as the first suit." Channer v. Dep't of Homeland Sec., 527 F.3d 275, 280 (2d Cir. 2008) (internal citations and quotations omitted). In making this determination, courts consider "(1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations." Id.

This action is the plaintiff's third attempt to sue BWH, Morton, and HMS for the same alleged conduct. In 2014, the plaintiff filed two actions[4] in the District of Massachusetts against BWH, CHB, MGH, and/or HMS that were later consolidated into one action, Docket No. 1:14-cv-14017-GAO (the "First Massachusetts Litigation"). In his consolidated complaint, the plaintiff alleged "continuing reckless coercive retaliation as

---

[4] These prior actions were Rafi v. Brigham and Women's Hospital, Children's Hospital Boston, Massachusetts General Hospital, and Harvard Medical School, Docket No. 1:14-cv-14017-GAO and Rafi v. Children's Hospital Boston and Harvard Medical School, Docket No. 1:14-cv-14205-GAO.

well as continuing reckless discrimination to this date against each and every one of his professional clinical cytogenetic, medical genetic research, and technological position applications . . . in collusion with Dr. Lifton." Am. Compl. at 3, Docket No. 1:14-cv-14017-GAO, ECF No. 54. Although Morton was not named as a defendant in the consolidated action, the allegations against BWH and HMS stem, in part, from her alleged conduct:

> [HMS] faculty members, such as, Dr. Cynthia Morton (BWH) in particular, who, although showed initial interest in offering professional Clinical Cytogenetics position to Plaintiff during 2003, in collusion with Dr. Lifton refused to consider any of Plaintiff's job applications at BWH and MGH, despite Plaintiff indicating to her as well as to Dr. Lifton [that] he lacks interest in taking up a position at [Yale's] Clinical Cytogenetics laboratory, essentially to be utilized as a legal witness against Dr. Qumsiyeh[.]

Id. at 13. The court dismissed the plaintiff's claims with prejudice for failure to satisfy the minimum pleading requirements of Federal Rules of Civil Procedure 8 and 10. See Rafi v. Brigham & Women's Hosp., No. 1:14-cv-14017-GAO, 2017 U.S. Dist. LEXIS 39598, *2-4 (D. Mass. Mar. 20, 2017). The dismissal was affirmed on appeal, see Rafi v. Brigham & Women's Hosp., No. 17-1373 (1st Cir. Feb. 16, 2018), and the Supreme Court denied certiorari, see Rafi v. Brigham & Women's Hosp., No. 18-6166 (Dec. 3, 2018).

In 2018, the plaintiff filed another action, this time against Morton alone, in the District of Massachusetts, which the court dismissed on claim preclusion grounds:

Here, all the requirements for claim preclusion are met. Rafi's earlier action [the First Massachusetts Litigation] was dismissed for failure to state a claim upon which relief can be granted. A dismissal on this ground is a judgment on the merits of the case. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 & n.3 (1981) (noting that a dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is a judgment on the merits for res judicata purposes); Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010). There is also sufficient identicality of parties. In the earlier lawsuit, Morton was not named as a defendant but Rafi sought to hold her employer, BWH, liable for her conduct. For purposes of claim preclusion, the employer-employee relationship between BWH and Morton satisfies the privity requirement for matters within the scope of employment. See Krepps v. Reiner, 377 F. App'x 65, 68 (2d Cir. 2010) (holding that employee acting in the scope of his employment was in privity with the employer who was sued in earlier action, and employee could assert claim preclusion on the basis of prior judgment in favor of employer.).

Finally, there is sufficient identicality between the causes of action. Rafi's claims in this action were among the claims raised in [the First Massachusetts Litigation]. . . .

Rafi v. Morton, 1:18-cv-10482-NMG, ECF No. 9 at 6-7.

For the same reasons, this court finds that claim preclusion bars the Third Amended Complaint as to the BWH Defendants and HMS. The First Massachusetts Litigation was between the same adverse parties or those in privity with them as the instant suit, and it was adjudicated on the merits. See Berrios v. N.Y. Hous. Auth., 564 F.3d 130, 134 (2d Cir. 2009) ("As the sufficiency of a complaint to state a claim on which relief may be granted is a question of law, the dismissal for failure to state a claim is a final judgment on the merits and thus has res judicata effects.")

(internal citations omitted). Moreover, the instant suit involves claims that were raised in the prior litigation -- namely, that BWH, Morton, and HMS attempted to compel the plaintiff to seek employment at Yale by refusing to hire him and by blocking his candidacy for other positions throughout the Boston area. Thus, the plaintiff is barred from asserting these claims or claims that he could have raised in the earlier litigation.

The plaintiff argues that his claims are not barred by the doctrine of <u>res judicata</u> because, <u>inter alia</u>, they are based on "continuing violations [that] are for the very first time . . . being actioned here under 42 U.S.C. Sections 1985 & 1986." Third Am. Compl. at 10. However, "a plaintiff cannot avoid the effects of <u>res judicata</u> by 'splitting' his claim into various suits, based on different legal theories[.]" <u>Waldman v. Vill. of Kiryas Joel</u>, 207 F.3d 105, 110 (2d Cir. 2000). "It is [the] identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [the plaintiff] chose to form [his] complaint." <u>Woods v. Dunlop Tire Corp.</u>, 972 F.2d 36, 39 (2d Cir. 1992). The facts alleged in the Third Amended Complaint are nearly identical to those alleged in the prior litigation, and therefore constitute the same cause of action for purposes of claim preclusion.

The instant litigation also marks the third time that the plaintiff has sued the Yale Defendants for the same alleged

conduct. In 2014, the plaintiff filed suit against Yale and Lifton in this district. See Rafi v. Yale Univ. School of Med., Docket No. 14-cv-1582-VAB. In that action, the plaintiff likewise claimed that Yale and Lifton interfered with his job applications in the field of cytogenetics in retaliation for the plaintiff's refusal to work for Yale and testify against Qumsiyeh. See, e.g., Am. Compl. at 1-3, Docket No. 14-cv-1582-VAB, ECF No. 51. The court dismissed the complaint with prejudice for, inter alia, the failure to state a claim upon which relief can be granted. See Rafi v. Yale Univ. School of Med., No. 14-cv-1582-VAB, 2017 U.S. Dist. LEXIS 117678, *40-41 (D. Conn. Jul. 27, 2017). The dismissal was affirmed on appeal, see Rafi v. Yale Univ. School of Med., No. 17-2754 (2d Cir. Mar. 3, 2019), and the Supreme Court denied certiorari, see Rafi v. Yale Univ. School of Med., No. 18-5977 (Nov. 5, 2018).

In 2018, the plaintiff filed suit against Lifton alone in the Southern District of New York. See Rafi v. Lifton, No. 18-cv-1161-CM. In that action, the plaintiff asserted claims under 42 U.S.C. §§ 1983, 1985(3), 1986, 1981a, and 2000d-4a. The court dismissed the action on res judicata grounds, stating that "because the District of Connecticut already considered Plaintiffs' claims on the merits and dismissed the action with prejudice, the doctrine of claim preclusion bars this employment discrimination action."

<u>Rafi v. Lifton</u>, 18-CV-1161-CM, 2018 U.S. Dist. LEXIS 49823, *5-6 (S.D.N.Y. Mar. 23, 2018).

For the same reason, this court finds that claim preclusion bars the Third Amended Complaint as to the Yale Defendants. The prior litigation was between the same adverse parties or those in privity with them as the instant suit, and it was adjudicated on the merits. Although Bale was not named as a defendant in the prior litigation, the plaintiff sought to hold his employer, Yale, liable for his alleged conduct:

> Plaintiff also alleges that Dr. Lifton's subordinate and colleague at his Genetics Department (YSM), Dr. Allen Bale is/was also well positioned to derail Plaintiff's professional clinical cytogenetics-candidacies when contact[ed] due to his contact information at the American Board of Medical Genetics (AMBG)-official website as the point man at [Yale] for verifying ABMG-professional clinical cytogenetics training, and to know why Plaintiff could not pursue his trained (<u>in-demand and high-paying</u>) clinical cytogenetics profession . . . since leaving [Yale.]

3:14-cv-1582-VAB, ECF No. 51 at 25-26 (emphasis in original). For purposes of claim preclusion, the employer-employee relationship between Yale and Bale satisfies the privity requirement for matters within the scope of employment. <u>See</u> <u>Houdet v. U.S. Tennis Ass'n</u>, 13-CV-5131 (FB) (LB), 2014 U.S. Dist. LEXIS 167791, *9-10 (E.D.N.Y. Dec. 3, 2014) (concluding that employees acting in the scope of their employment "have a sufficiently close relationship" with the employer who was sued in an earlier action "to justify application of res judicata") (citing 18 Moore's Federal Practice §

131.40[3][f] (Matthew Bender 3d Ed.) ("Generally, an employer-employee . . . relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship."). Because the instant suit involves claims against the Yale Defendants that were or could have been raised in the prior litigation, the plaintiff's claims are barred.

## IV. CONCLUSION

For the foregoing reasons, Defendant Harvard Medical School's Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 61), Defendants' Brigham and Women's Hospital and Cynthia C. Morton, Ph.D's Motion to Dismiss (ECF No. 63), and Defendants' Yale University, Richard P. Lifton M.D., and Allen E. Bale, M.D. Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 65) are hereby GRANTED. The plaintiff's Third Amended Complaint (ECF No. 52) is dismissed with prejudice.

The Clerk shall enter judgment accordingly and close the case. It is so ordered.

Dated this 28th day of July 2020, at Hartford, Connecticut.

/s/ AWT
Alvin W. Thompson
United States District Judge